UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


WESLEY K. ASHCRAFT,

                    Petitioner,

v.                                    Case No. 3:06-cv-806-J-33HTS

WALTER A. MCNEIL,[1]
et al.,

                    Respondents.

_____

### ORDER

### I. Status

          Petitioner Wesley K. Ashcraft, an inmate of the Florida penal

system who is proceeding *pro se*, initiated this action by filing a

Petition for Writ of Habeas Corpus (Doc. #1) pursuant to 28 U.S.C.

§ 2254.  Thereafter, Petitioner Ashcraft filed an Amended Petition

(Doc. #12), in which he challenges a 2003 state court (Duval

County, Florida) judgment of conviction for robbery and home

invasion robbery on the following grounds: (1) ineffective

assistance of counsel for failure to properly convey a plea offer;

(2) ineffective assistance of counsel for giving misleading advice

_____

          [1] Pursuant to Rule 25(d)(1) of the Federal Rules of Civil
Procedure, Walter A. McNeil is substituted for James R. McDonough
as the proper party Respondent having custody over Petitioner.

regarding the State's ten-year plea offer; (3) ineffective assistance of counsel for failure to visit Petitioner at "a reasonable time" at the jail; (4) involuntary plea due to the effects of Elavil, an anti-depressant drug; (5) ineffective assistance of counsel for failure to investigate the evidence and depose the witnesses (Helen Cox and Kevin Thomas); (6) ineffective assistance of counsel for failure to file an appeal; (7) ineffective assistance of counsel for failure to appear for a pretrial conference; and (8) the state court erred by summarily denying the Rule 3.850 motion without conducting an evidentiary hearing.

Respondents have responded to the Amended Petition. <u>See</u> Respondents' Response to Amended Petition for Writ of Habeas Corpus (Doc. #14) (hereinafter Response). In support of their contentions, they have submitted exhibits.[2] Petitioner has replied. <u>See</u> Petitioner's Reply Response to Respondents' Response to Petitioner's Amended Petition for Writ of Habeas Corpus by Order of Court (Doc. #17) (hereinafter Reply). This case is now ripe for review.

---

[2] The Court will hereinafter refer to Respondents' exhibits, attached to their Response, as "Ex."

## II. Procedural History

On August 20, 2002, Petitioner was charged with robbery (count one) and home invasion robbery (count two).   The Information stated:

> HARRY L. SHORSTEIN, State Attorney for the Fourth Judicial Circuit of the State of Florida, in and for Duval County, charges that WESLEY KEVIN ASHCRAFT on the 6th day of July, 2002, in the County of Duval and the State of Florida, did unlawfully by force, violence, assault, or putting in fear, take money or other property, to-wit: U.S. Currency, the value of $300.00 or less, the property of C and B Salvage, as owner or custodian, from the person or custody of Shirley Barlow, with the intent to permanently or temporarily deprive C and B Salvage of the money or other property, contrary to the provisions of Section 812.13(2)(c), Florida Statutes.
>
> And for the second count of this information, your informant further charges that WESLEY KEVIN ASHCRAFT on the 6th day of July, 2002, in the County of Duval and the State of Florida, did enter into a dwelling with the intent to commit a robbery, and did unlawfully by force, violence, assault, or putting in fear take money or other property, to-wit: U.S. Currency, the value of less than $300.00, the property of Helen Cox, as owner or custodian from the person or custody of Helen Cox, an occupant of the dwelling, with the intent to permanently or temporarily deprive Helen Cox of the money or other property, contrary to the provisions of Section 812.135, Florida Statutes.

Ex. A, Information.

On January 6, 2003, pursuant to a plea agreement, Petitioner entered pleas of guilty to robbery (count one) and home invasion robbery (count two).  Ex. B, Plea of Guilty; Ex. C, Transcript of

3

the January 6, 2003, Plea Proceeding (hereinafter Plea Tr.).  On January 22, 2003, Petitioner was sentenced to fifteen years of imprisonment for the robbery (count one, a second degree felony), and to twenty years of imprisonment for the home invasion robbery (count two, a first degree felony), to run concurrently to count one.  Ex. D, Transcript of the Sentencing Proceeding (hereinafter Sentencing Tr.) at 17, 30; Ex. E, Judgment.

Petitioner did not initiate a direct appeal of his judgment and sentences by filing a timely notice of appeal.  Response at 2. However, although he did petition the appellate court for a belated appeal, he was not granted such relief.  Ex. F1; Ex. F2; Ex. F3; Ex. F4; Ex. F5; Ex. F6.

On or about February 16, 2004, Petitioner filed a *pro se* motion for post conviction relief pursuant to Fla. R. Crim. P. 3.850, raising one claim: ineffective assistance of counsel for failure to properly convey a plea offer.  Ex. G.  Thereafter, he filed a motion to amend (Ex. H) and a supplemental Rule 3.850 motion, in which he raised the following claims:  (1) ineffective assistance of counsel for failure to properly convey a plea offer; (2) ineffective assistance of counsel for giving misleading advice regarding the State's ten-year plea offer; (3) ineffective assistance of counsel and denial of access to counsel due to the effects of medication (Elavil); (4) involuntary plea due to the effects of Elavil; (5) ineffective assistance of counsel for

failure to investigate evidence and depose witnesses; (6) ineffective assistance of counsel for failure to file an appeal; and (7) ineffective assistance of counsel for failure to appear for a court proceeding (September 7, 2002, pretrial conference). Petitioner also filed a Request to Take Judicial Notice of disciplinary action taken by the Florida Supreme Court against his former trial counsel. Ex. J. On February 3, 2006, the state court entered an order granting Petitioner's Request to Take Judicial Notice and summarily denied the Rule 3.850 motion. Ex. K.

Petitioner appealed the denial of his Rule 3.850 motion. Ex. L. Petitioner filed a *pro se* brief, and the State filed a notice that it would not file an answer brief. Ex. M; Ex. N. On August 10, 2006, the appellate court per curiam affirmed without issuing a written opinion. Ashcraft v. State, 936 So.2d 566 (Fla. 1st DCA 2006); Ex. O. The mandate was issued on September 6, 2006.[3] Ex. O.

The Petition (Doc. #1) is timely filed within the one-year period of limitation, and the four additional claims (grounds three, four, five and eight) presented in the Amended Petition

---

[3] On or about September 3, 2005, during the pendency of the Rule 3.850 motion, Petitioner filed a petition for writ of mandamus in the appellate court, seeking to compel the trial court to rule on the Rule 3.850 motion. Ex. P1. The appellate court issued an order for the State to show cause why mandamus relief should not be granted, and the State filed a response. Ex. P2. On April 19, 2006, the petition for writ of mandamus was denied as moot. Ex. P3.

(Doc. #12) sufficiently relate back to the filing of the original Petition.  See 28 U.S.C. § 2244(d).

### III. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 127 S.Ct. 1933, 1940 (2007) (citation omitted).  "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id.

This Court has carefully reviewed the record and concludes Petitioner is not entitled to an evidentiary hearing.  The pertinent facts of the case are fully developed in the record before the Court.  Smith v. Singletary, 170 F.3d 1051, 1054 (11th Cir. 1999).  Thus, the Court can "adequately assess [Petitioner's] claim[s] without further factual development." Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).  Therefore, an evidentiary hearing will not be conducted by this Court.

## IV.  Standard of Review

Since this action was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA), April 24, 1996, the Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d), as amended by AEDPA.  Nelson v. Alabama, 292 F.3d 1291, 1294-95 (11th Cir. 2002), cert. denied, 538 U.S. 926 (2003); Fugate v. Head, 261 F.3d 1206, 1215 n.10 (11th Cir. 2001), cert. denied, 535 U.S. 1104 (2002); Wilcox v. Florida Dep't of Corr., 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000).  Under AEDPA, however, the review "is 'greatly circumscribed and highly deferential to the state courts.' Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002)." Stewart v. Sec'y, Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir. 2007).

The Eleventh Circuit has explained this deferential review:

> [Section] 2254(d) allows federal habeas relief
> for a claim adjudicated on the merits in state
> court only if the state court adjudication
> resulted in a decision that was: "(1) . . .
> contrary to, or involved an unreasonable[4]
> application of, clearly established Federal
> law, as determined by the Supreme Court of the
> United States; or (2) . . . based on an
> unreasonable determination of the facts in
> light of the evidence presented in the State
> court proceeding."   28 U.S.C. § 2254(d);

---

[4] "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (2007) (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

> Marquard, 429 F.3d at 1303.  The phrase
> "clearly established Federal law," as used in
> § 2254(d)(1), encompasses only the holdings,
> as opposed to the dicta, of the United States
> Supreme Court as of the time of the relevant
> state court decision.  See Carey v. Musladin,
> 549 U.S. —, 127 S.Ct. 649, 653, 166 L.Ed.2d
> 482 (2006) (citing Williams v. Taylor, 529
> U.S. 362, 412, 120 S.Ct. 1495, 1523, 146
> L.Ed.2d 389 (2000)); Osborne v. Terry, 466
> F.3d 1298, 1305 (11th Cir. 2006).

Stewart, 476 F.3d at 1208-09.

"AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.' §2254(e)(1)." Schriro, 127 S.Ct. at 1939-40 (footnote omitted). This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003). See Peoples v. Campbell, 377 F.3d 1208, 1227 (11th Cir. 2004), cert. denied, 545 U.S. 1142 (2005). Thus, to the

extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under the new § 2254(d).

## V. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel.  That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted).  The Eleventh Circuit captured the essence of an ineffectiveness claim:

> [A] petitioner must show that his lawyer's performance fell below an "objective standard of reasonableness" and that the lawyer's deficient performance prejudiced the petitioner. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).  Establishing these two elements is not easy:  "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)).
>
> For assessing a lawyer's performance, Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000) (en banc) cert. denied, 531 U.S. 1204, 121 S.Ct. 1217, 149 L.Ed.2d 129 (2001), sets out the basic law:  "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." Id. at 1314 (internal marks omitted). . . .  Our role in reviewing an ineffective assistance claim is not to "grade" a lawyer's performance; instead, we determine only whether a lawyer's performance was within "the wide range of

professionally competent assistance." <u>See</u> <u>Strickland</u>, 104 S.Ct. at 2066.

The inquiry into whether a lawyer has provided effective assistance is an objective one:  a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take." <u>See</u> <u>Chandler</u>, 218 F.3d at 1315. . . .

A petitioner's burden of establishing that his lawyer's deficient performance prejudiced his case is also high. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test." <u>Strickland</u>, 104 S.Ct. at 2067. Instead, a petitioner must establish that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given adequate assistance. <u>See</u> <u>id</u>. at 2068.

<u>Van Poyck v. Florida Dep't of Corrections</u>, 290 F.3d 1318, 1322-23 (11th Cir. 2002) (per curiam) (footnotes omitted), <u>cert</u>. <u>denied</u>, 537 U.S. 812 (2002), 537 U.S. 1105 (2003).

In sum, "[w]ithout proof of both deficient performance and prejudice to the defense, . . . it could not be said that the sentence or conviction 'resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable,' and the sentence or conviction should stand." <u>Bell v. Cone</u>, 535 U.S. 685, 695 (2002) (internal citation omitted) (quoting <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

In <u>Hill v. Lockhart</u>, 474 U.S. 52, 58-59 (1985) (footnote omitted), the Court held:

> that the two-part <u>Strickland v. Washington</u>
> test applies to challenges to guilty pleas
> based on ineffective assistance of counsel.
> In the context of guilty pleas, the first half
> of the <u>Strickland v. Washington</u> test is
> nothing more than a restatement of the
> standard of attorney competence already set
> forth in <u>Tollett v. Henderson</u>, <u>supra</u>, and
> <u>McMann v. Richardson</u>, <u>supra</u>. The second, or
> "prejudice," requirement, on the other hand,
> focuses on whether counsel's constitutionally
> ineffective performance affected the outcome
> of the plea process. In other words, in order
> to satisfy the "prejudice" requirement, the
> defendant must show that there is a reasonable
> probability that, but for counsel's errors, he
> would not have pleaded guilty and would have
> insisted on going to trial.

Ineffective assistance of counsel may also require that a plea be set aside on the ground that it was involuntary because voluntariness implicates not only threats and inducements but also ignorance and incomprehension. See <u>Hill v. Lockhart</u>, 474 U.S. at 56 (quoting <u>North Carolina v. Alford</u>, 400 U.S. 25, 31 (1970)) (noting that the "longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'").

> "A guilty plea is open to attack on the ground
> that counsel did not provide the defendant
> with 'reasonably competent advice.'" <u>Cuyler
> v. Sullivan</u>, 446 U.S. 335, 344, 100 S.Ct.
> 1708, 1716, 64 L.Ed.2d 333 (1980) (quoting
> <u>McMann v. Richardson</u>, 397 U.S. 759, 770, 90
> S.Ct. 1441, 1448, 25 L.Ed.2d 763 (1970)); <u>see
> Hill v. Lockhart</u>, 474 U.S. 52, 58-59, 106
> S.Ct. 366, 370-71, 88 L.Ed.2d 203 (1985)
> (holding that, in the plea context, a habeas
> petitioner establishes ineffective assistance

11

> of counsel by demonstrating that counsel's advice and performance fell below an objective standard of reasonableness, based upon which he pled guilty). For a guilty plea to "represent an informed choice" so that it is constitutionally "knowing and voluntary," the "[c]ounsel must be familiar with the facts and the law in order to advise the defendant of the options available." Scott v. Wainwright, 698 F.2d 427, 429 (11th Cir. 1983). "The failure of an attorney to inform his client of the relevant law clearly satisfies the first prong of the Strickland analysis . . . as such an omission cannot be said to fall within 'the wide range of professionally competent assistance' demanded by the Sixth Amendment." Hill, 474 U.S. at 62, 106 S.Ct. at 372 (White, J., concurring) (quoting Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984)).

Finch v. Vaughn, 67 F.3d 909, 916 (11th Cir. 1995).

A federal habeas court reviews a state court guilty plea only for compliance with constitutional protections.

> This court has concluded that "[a] reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process: If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." Stano v. Dugger, 921 F.2d 1125, 1141 (11th Cir.) (en banc), cert. denied, ___ U.S. ___, 112 S.Ct. 116, 116 L.Ed. 2d 85 (1991).

Jones v. White, 992 F.2d 1548, 1556-57 (11th Cir.), cert. denied, 510 U.S. 967 (1993).

Thus, in order for a guilty plea to be constitutionally valid, it must be made knowingly, intelligently, and voluntarily.  <u>Pardue v. Burton</u>, 26 F.3d 1093, 1096 (11th Cir. 1994).

> A guilty plea is an admission of criminal conduct as well as the waiver of the right to trial.  <u>Brady v. United States</u>, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970).  "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."  <u>Id.</u>; <u>United States v. Fairchild</u>, 803 F.2d 1121, 1123 (11th Cir. 1986) (per curiam).
>
> Reviewing federal courts "may set aside a state court guilty plea only for failure to satisfy due process."  <u>Stano v. Dugger</u>, 921 F.2d 1125, 1141 (11th Cir.) (en banc), <u>cert. denied</u>, 502 U.S. 835, 112 S.Ct. 116, 116 L.Ed.2d 85 (1991).  "[W]hen it develops that the defendant was not fairly apprised of its consequences" or when "the defendant pleads guilty on a false premise" in the prosecution's plea agreement, a guilty plea violates the Due Process Clause.  <u>Mabry v. Johnson</u>, 467 U.S. 504, 509, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984).  The Court has instructed that the "essence" of any promises that induce a guilty plea "must in some way be made known" to the defendant.  <u>Santobello v. New York</u>, 404 U.S. 257, 261-62, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971).
>
> For a guilty plea to be entered knowingly and intelligently, "'the defendant must have not only the mental competence to understand and appreciate the nature and <u>consequences</u> of his plea but he also must be reasonably informed of the nature of the charges against him, the factual basis underlying those charges, and the <u>legal</u> <u>options</u> <u>and</u> <u>alternative</u> <u>that</u> <u>are</u> <u>available</u>.'"  <u>Stano</u>, 921 F.2d at 1142 (citation omitted) (emphasis added).  Voluntariness implicates "[i]gnorance,

incomprehension," and "inducements" as well as "coercion, terror" and "threats." <u>Boykin v. Alabama</u>, 395 U.S. 238, 242-43, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969); <u>Stano</u>, 921 F.2d at 1141. Thus, "[i]gnorance of the consequences of a guilty plea may require its rejection." <u>Stano</u>, 921 F.2d at 1141 (citing <u>Boykin</u>, 395 U.S. at 243-44, 89 S.Ct. at 1712).

<u>Finch</u>, 67 F.3d at 914-15.

## VI. Findings of Fact and Conclusions of Law

### A. Grounds One and Two

Petitioner claims that counsel (Craig Martin) was ineffective for failure to properly convey a plea offer (ground one) and for giving misleading advice regarding the State's ten-year plea offer (ground two). As acknowledged by Petitioner, he raised these grounds in his Rule 3.850 motion (grounds one and two). In denying these grounds on the merits, the trial court identified the two-prong <u>Strickland</u> ineffectiveness test as the controlling law and stated in pertinent part:

> In the Defendant's Motion and Memorandum filed on February 19, 2004, and in the Defendant's Supplement Motion filed on January 20, 2006, grounds one and two, the Defendant claims ineffective assistance of counsel in that counsel did not inform the Defendant of the "penalties he could have received for the charges, nor explained the context of the evidence against him, which included a confession, victim identification, and his chances of winning at trial." (Defendant's Motion at 2.)[5] The Defendant claims that the State offered the Defendant a plea deal for ten years, but that his counsel advised him

---

[5] Ex. G at 2.

14

not to accept the deal. The Defendant states
that had counsel informed him of the
penalties, context of the evidence and his
chances of winning, he would have accepted the
ten year plea agreement at that time. In the
Defendant's memorandum he states, "[i]n this
case, the defendant had confessed. From the
outset he admitted to the crimes and that he
had done something terribly wrong. The victims
in this case identified the defendant. As
such, the defendant cannot escape the guilt in
this case. The offense in this case carries 45
years. Had defendant been properly advised he
would have taken the 10 year offer."
(Defendant's Memorandum at 4.)[6]

In the Defendant's Supplemental Motion,
he states that the plea offer was extended at
arraignment when the Defendant was represented
by the Public Defender['] s Office, not Craig
Martin. (Defendant's Supplemental Motion at
4.)[7] The Defendant states he "advised the
Public Defender that defendant's girlfriend,
Mrs. Cheryl Miniaci, was attempting to retain
a private attorney that could possibly enable
defendant to plead to a lesser offense and
sentence." (Defendant's Motion at 5.)[8] The
Defendant states that after arraignment, Mr.
Martin visited him and indicated that he could
get the Defendant a better deal, indicating
that he could get the Defendant sentenced to a
drug rehabilitation program at the Phoenix
House. The Defendant states that Mr. Martin
did not appear at the first pretrial hearing,
but that his Public Defender advised him that
the ten year offer was still on the table. The
Defendant states that at this time he informed
his Public Defender that he had retained Mr.
Martin, and that Mr. Martin was supposed to be
present at the pretrial hearing. The Defendant
states that at this time, the State entered a
not guilty plea for the Defendant. The

---

[6] Ex. G at 4.

[7] Ex. I at 4-5.

[8] Ex. I at 5.

Defendant then states that Mr. Martin came to him about a month later and indicated that the Defendant would not be able to enter into the Phoenix House without also serving three to five years of prison time as well. After the second pre-trial hearing, the Defendant states that Mr. Martin informed him that the State had withdrawn the ten year offer. The Defendant claims that at this time Mr. Martin informed him it would be in the Defendant's best interest to plead to the mercy of the court and states that "the court would not exceed the ten (10) year offer from the State." (Defendant's Second Motion at 7.)[9]

While the Defendant claims that Mr. Martin never reviewed his case with him before advising him to reject the plea after the first pre-trial hearing, he does not claim that his Public Defender did not. The Defendant was aware of the fact that he confessed, repeatedly, to the crime. The Defendant does not state that anyone told him that they could get his confession suppressed, or even that it was possible. Accordingly, even if Mr. Martin did not go over the Defendant's case with him at that time, the Defendant knew he had confessed and had contact with his Public Defender who was handling the initial plea offer. Further, the Defendant admits that Mr. Martin attempted to get him placed in the Phoenix House, but that it was unsuccessful. When this failed, Mr. Martin went to the State and was informed that they were no longer offering the ten years. While Mr. Martin's efforts were not successful, this is not indicative of ineffective assistance of counsel. The Defendant's statements evidence Mr. Martin's actions to secure a better plea agreement for the Defendant. The Defendant does not claim that Mr. Martin had no chance at reducing the Defendant's plea agreement if he had been successful in getting him into the Phoenix House. The "standard is reasonably effective

---

[9] Ex. I at 7.

counsel, not perfect or error-free counsel."
<u>Coleman</u>, 718 So.2d at 829. The Defendant has
failed to establish that counsel's performance
was outside the wide range of reasonable
professional assistance. Accordingly, the
Defendant has failed to establish that counsel
was deficient. <u>Strickland</u>, 466 U.S. 668.

The Defendant's contention that counsel
stated the court would not sentence him above
the ten years offered by the State is refuted
by the record. The Defendant testified at his
plea hearing that he understood he could be
sentenced to a term of incarceration from
forty-five months[10] to consecutive terms of
forty-five years. (Exhibit "C," page 4.) The
Defendant also testified that no one had
promised him that the court would impose a
certain term of years if he pled guilty.
(Exhibit "C," page 5.) A defendant may not
seek to go behind his sworn testimony at a
plea hearing in a post conviction motion.
<u>Stano v. State</u>, 520 So.2d 278 (Fla. 1988);
<u>Dean v. State</u>, 580 So.2d 808 (Fla. 3d DCA
1991); <u>Bir v. State</u>, 493 So.2d 55 (Fla. 1st
DCA 1986). Therefore, the Defendant's claim is
without merit.

Ex. K at 68-71 (footnote omitted).   Thus, review of the above-
quoted order confirms that the state court fully reviewed
Petitioner's specific ineffectiveness claims and, upon applying the
correct legal standard, found Petitioner's claims to be without
merit.[11]

_____

[10] Petitioner acknowledged that he understood that he could be
sentenced to the minimum sentence of fifty-four (54) months to
forty-five (45) years, as the possible maximum sentence.   Plea Tr.
at 4.

[11] Petitioner, in support of his claims, continues to rely upon
the record of disciplinary action subsequently taken by the Florida
Supreme Court against his former counsel Craig Martin.   <u>See</u> Amended
Petition at 6-7.   However, in considering and resolving the same

As noted previously, upon Petitioner's appeal, the appellate court per curiam affirmed the trial court's order.  Accordingly, the claims were rejected on the merits by the state trial and appellate courts.   Thus, there are qualifying state court decisions.   These grounds should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA.  Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of these claims because the state courts' adjudications of the claims were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

The January 6, 2003, plea colloquy reflects the following exchanges among the trial judge, prosecutor, defense counsel and Petitioner Ashcraft.  Mr. Martin initially informed the court that Petitioner had authorized him to withdraw his previously entered plea of not guilty and to enter a plea of guilty "as to both counts

---

ineffectiveness claims in Petitioner's Rule 3.850 motion, the state court took judicial notice of the Florida Supreme Court's decision in <u>The Florida Bar v. Craig Martin</u>, 879 So.2d 625 (Fla. 2004), and the Report of the Referee Accepting Consent Judgment filed in <u>The Florida Bar v. Craig Martin</u>, 879 So.2d 625, and summarily denied the claims.   Ex. J, Request to Take Judicial Notice, attached Florida Supreme Court decision, dated June 17, 2004, and Report of the Referee Accepting Consent Judgment; Ex. K at 67.

straight up to the Court." Plea Tr. at 3. Petitioner confirmed to the trial judge that he had given Mr. Martin his consent to enter a plea of guilty to both counts on his behalf. Id. Petitioner also affirmed that he was entering the guilty plea because he was indeed guilty of the offenses. Id. The prosecutor set forth the sentencing range that could be imposed for the charges:

> Your Honor, the minimum sentence is 54 months [(four and one-half years)] Florida State Prison. The upper, if both counts were to run consecutively, this is a strong armed robbery and a home invasion robbery, he faces a maximum of 45 years.

Id. at 4. When the trial judge inquired as to whether Petitioner Ashcraft understood that "the period of time within which the court has to find a sentence" is "between 54 months and 45 years as a possible maximum sentence," Petitioner affirmed that he understood that sentencing range. Id.

Petitioner also affirmed that he understood that, by entering the plea of guilty to the charges, he would waive certain constitutional rights. Id. Petitioner further confirmed that no one had threatened him, coerced him or intimidated him to get him to enter a plea of guilty. Id. at 5. The trial judge informed Petitioner that the plea of guilty was "a straight up plea on both counts," and Petitioner understood that there was not a negotiated sentence. Id. Clearly, the record reflects that Petitioner did not expect a particular sentence, but knew that the trial judge

could sentence him anywhere from fifty-four months to forty-five years of imprisonment.

Petitioner also stated that he had an opportunity to review with his attorney all of the conditions of the written plea form, that he did not have any questions about the plea form and that he was satisfied with the services of his attorney. Id. Petitioner further confirmed that he did not have any drugs or alcohol in the last twenty-four hours that would make him unable to comprehend the plea proceedings and that he did not have any mental or physical defects that would negatively affect his ability to understand the plea proceedings. Id. at 5-6. The trial judge, after the above instructions and inquiries, asked Petitioner if he needed additional time to reflect upon or reconsider his decision. Id. at 6-7. Petitioner stated he did not need more time, but affirmed that he still wanted to enter the plea of guilty. Id. at 7. The trial judge then accepted the plea of guilty on both counts as freely and voluntarily entered. Id.

At the sentencing hearing on January 22, 2003, the prosecutor called Helen Cox, the victim of the home invasion robbery (count two). Ms. Cox, a small-framed, eighty-three year old lady living in the same home for sixty years, testified about the July 6, 2002, invasion of her home. Sentencing Tr. at 5, 9. She set forth her rendition of the facts as follows:

> I had gone out to get my paper, and my
> doorbell rang as I got back in the house. And

20

I went to the door and I opened it.  I don't have anything between me and the big door on the outside.  This man was standing there and told me he needed some money.

And I said, "Well, I'm sorry.  I can't give you any.  I don't have any."

And I started to close the door.  And when I did, he took his left hand, slammed the door open, come up with a knife, slammed me against the wall, put a great big bruise on my arm, knocked things off the table and off the wall, he knocked me back so hard, and he had that knife pointed at me right there.

I didn't know what he was going to do, whether he was going to kill me, rape me, or what.  And I told him, I says, "Please don't hurt me.  Please don't hurt me.  I'll give you some money."

And he told me he was a drug addict, and I said, "Well, if you'll just let me go, I'll give you some money."

So he forced me into the kitchen, and we got in the kitchen, and I turned around, looked at him.  I says, "Please don't hurt me. I'll give you some money."  So I says, "I'll have to go and get it."

And so I was going to the back bedroom to get my purse, and he -- I says, "If you wait here, I'll go get it."

He says, "I'm going with you because you might have a gun."

So I got in there.  I got my purse, and I got my billfold out, and I was going to give him $20.  And he grabbed my billfold out of my hand and he says, "I want it all."

So he took it all.  And he kept telling me over and over he was a drug addict.  So I got him out.  He turned around after he got the money, and I got him to the front door and

> got him out. And that's exactly what
> happened. I'll never forget it. It's burned
> in my memory.
>
>         . . . .
>
>     To me [the knife] looked like a
> pocketknife. It wasn't a big knife. It was a
> small knife. It looked like a pocketknife.
>
>         . . . .
>
>     Well, it's made me afraid to go to my
> front door. I've had a security door put up
> in front of my big wooden door. I don't go
> out at night and come home after dark. I'm
> very careful when I go out into the yard. And
> it's just made me very aware, more aware of
> things. It just put the scare of my life into
> me.

Id. at 6-8. The prosecution's second witness Walter Price, a relative and the caretaker of Ms. Cox, requested that the court "instill the most severe punishment allowed by Florida Statutes and allowed by the law . . . ." Id. at 10.

The defense called two witnesses as well. Ms. Cheryl Miniaci (Petitioner's girlfriend) testified that that she had never known Petitioner Ashcraft to be a violent person. Id. at 11. She and Vincent Scott Ashcraft (Petitioner's brother) described Petitioner's depression and drug problems. Id. at 12, 15-17. Finally, Petitioner Ashcraft made a statement to the court.

> First of all, Ms. Cox, I respect her
> enough to say that a lot that she said was
> exactly correct, but some of it was a little
> different. When I realized what I was doing
> in her house, she was showing me to the door,
> and I told her I was sorry. I was out of my
> mind.

22

> And I hugged her then and I told her I
> was sorry.  I don't know if she left that out
> on purpose, but I apologize to the family, you
> know.
>
> And I tried to turn myself in twice.  I
> called my uncle.  He retired from the
> sheriff's department here.  He got advice to
> him [on] what to do.  He told me to do the
> right thing, to turn myself in and be honest.
> And the record will show that I cooperated
> with detectives and I told them all of it, you
> know, the truth.
>
> I've never run from anything I done
> wrong.  I've told the truth and I take my
> punishment, and that's -- I feel like I'm here
> voluntarily a lot to make amends.

Id. at 18-19.

Petitioner admitted that he threatened Ms. Cox and told her

that he had a knife.  Id. at 21, 22.  He further acknowledged that

he "pushed her and manipulated her."  Id. at 21.  Six hours after

he robbed Ms. Cox, he went to C&B Salvage.  Id. at 23.  Petitioner

described the incident.

> I asked the lady to buy a lighter, and
> these people, they know me well.  My brother
> lived next door.  He was -- they loved him.
> And I cashed my checks there for years.
>
> . . . .
>
> After I bought the lighter, she opened
> the register.  I reached over the counter and
> took the money out of the $20 side.

Id. at 24.

As mitigation, Mr. Martin argued that the crime was committed

in an unsophisticated manner, that Petitioner had shown remorse,

that he acknowledged his guilt immediately when "he gave a full confession" and that he had cooperated with law enforcement. <u>Id</u>. at 25, 27-29.  In response, the prosecutor requested that the court impose a sentence of twenty-five to thirty years. <u>Id</u>. at 27. The court sentenced Petitioner to fifteen years of imprisonment for the robbery (count one) and to twenty years of imprisonment for the home invasion robbery (count two), to run concurrently to count one. <u>Id</u>. at 30; Ex. E, Judgment.

Although a defendant's statements during the plea colloquy are not insurmountable, the Supreme Court held in <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977), that "the representations of the defendant [at a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity."  Here, based upon the record before this Court, Petitioner has not overcome this barrier. Based on the record, it is clear that Petitioner was fully informed that he could go to trial, call witnesses and contest the charges; however, he decided to enter a plea of guilty.  He understood the charges against him, understood the consequences of a guilty plea, and voluntarily chose to plead guilty, without being coerced to do so.

With respect to the State's initial ten-year plea offer, the record reflects that Petitioner was represented by the Public

Defender's Office at the time of the offer and continued to represent him until October 3, 2002.[12] And, Petitioner acknowledges that the plea offer was conveyed to him by the public defender. The record further reflects that Petitioner wished, at that time, to retain private counsel who "may have been able to plea [him] out to a lesser charged offense." Ex. M, Initial Brief at 3. Further, while Petitioner claims he would have accepted the State's initial plea offer of ten years if he had been properly advised, the record shows that Mr. Martin initially attempted to seek drug treatment for Petitioner at the Phoenix House, which offered a drug rehabilitation program. Even at the sentencing hearing, Petitioner, his brother and his girlfriend spoke of Petitioner's continuing drug problems. Additionally, Petitioner acknowledges throughout his pleadings that he and Mr. Martin, during their visits, discussed his drug use. Further, even entering into the January 6, 2003, plea proceeding, Petitioner understood that the sentencing range was from fifty-four months to forty-five years. Plea Tr. at 4. With the straight up plea and counsel's mitigation arguments, Petitioner and counsel were hopeful that the trial judge would impose the minimum sentence (fifty-four months); however, based on the facts as set forth at the sentencing hearing, the

---

[12] The post conviction court stated: "the Defendant could not be represented by the Public Defender and Craig Martin at the same time. The Public Defender did not withdraw from the Defendant's case until October 3, 2002." Ex. K at 69 n.2.

trial judge imposed a twenty-year sentence with a concurrent fifteen-year sentence, which was far better than the State's requested twenty-five to thirty years.

## B. Ground Three

As ground three, Petitioner claims counsel was ineffective for his failure to visit Petitioner at "a reasonable time" at the jail. Specifically, he contends that Mr. Martin visited him late at night when Petitioner was on his medication (Elavil), which rendered him "compliant and pliable." Amended Petition at 18. Petitioner raised this ineffectiveness claim in his Rule 3.850 motion, and the court concluded that the claim was procedurally barred in that the claim could have and should have been raised on direct appeal and further that the claim was procedurally barred "as an impermissible attempt to circumvent the direct appeal procedural bar." Ex. K at 71-72. Respondents contend that this claim is now procedurally barred in this Court, and this Court agrees for the reasons stated in their Response. Response at 22-30.

However, even assuming *arguendo* that this claim is not procedurally barred, this ground should be addressed applying the deferential standard for federal court review of state court adjudications since the state court, in the alternative, adjudicated the claim on the merits.

> In the ground three of the Defendant's Supplemental Motion, the Defendant claims he was denied access of counsel because Mr. Martin only visited him late at night or early

in the morning. The Defendant claims that
before each meeting he was given Elavil, which
caused drowsiness and mental confusion. The
Defendant claims this denied him the right to
assist in a meaningful way in his defense. The
Defendant also claims that counsel was
ineffective in failing to either ask that the
medication be given at a different time or
visit the Defendant at a different time.

    . . . .

Even assuming this claim was not procedurally
barred, the Defendant has failed to establish
prejudice to his case. The Defendant does not
state how he could have assisted counsel any
more than he did. The Defendant bears the
burden to establish a valid ineffective
assistance claim. <u>Freeman v. State</u>, 761 So.2d
1055, 1061 (Fla. 2000); <u>Kennedy v. State</u>, 547
So.2d 912 (Fla. 1989); <u>see also</u> <u>Parker v.
State</u>, 603 So. 2d 616, 617 (Fla. 1st DCA 1992)
(affirming the denial of rule 3.850 relief and
holding that conclusory allegations of
ineffective assistance of counsel are facially
insufficient to demonstrate entitlement to
relief). The First District Court of Appeal
held in <u>Parker</u>:

> Appellant's allegations of
> ineffective assistance of counsel
> are stated as mere conclusions,
> unsupported by allegations of
> specific facts which, when
> considered in the totality of the
> circumstances, are not conclusively
> refuted by the record and
> demonstrate a deficiency of counsel
> that was detrimental to the
> defendant. As such, the allegations
> are facially insufficient to
> demonstrate entitlement to relief.

<u>Id.</u>, 603 So.2d at 616. The Florida Supreme
Court affirmed this ruling stating it would
not address the issues "because they are bare
bones, conclusory allegations." <u>Parker v.
State</u>, 904 So.2d 370, 375 n.3 (Fla. 2005);

27

> Gordon v. State, 863 So.2d 1215, 1218 (Fla.
> 2003) ("A defendant may not simply file a
> motion for post-conviction relief containing
> conclusory allegations that his or her trial
> counsel was ineffective and then expect to
> receive an evidentiary hearing."). This Court
> finds that the Defendant's claim as stated is
> conclusory and insufficiently pled. Parker,
> 904 So.2d at 375; Strickland, 466 U.S. 668.
> Finally, the Defendant does not state that,
> but for this alleged lack of access to his
> attorney, he would have not plead and would
> have insisted on going to trial. Accordingly,
> this Court finds the Defendant has failed to
> establish prejudice to his case. Strickland,
> 466 U.S. 668; Hill, 474 U.S. at 59.

Ex. K at 72-73.

Accordingly, this claim was rejected on the merits by the state court. Thus, this claim should be addressed applying the deferential standard for federal court review of state court adjudications. Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Further, the ineffectiveness is without merit. In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence. The record reflects that the facts of the crimes were not complex. Petitioner

28

had fully confessed to both crimes.  Sentencing Tr. at 28.  And, the victims in each case were able to identify Petitioner. Although Petitioner contends that he was drowsy, pliable and compliant while on the medication during the jail visits with Mr. Martin, he states that he does remember the "context" of the visits with Mr. Martin.  Amended Petition at 18.  Petitioner's allegations in his state court pleadings and his pleadings in this Court are conflicting.  He now recalls that he explained the circumstances concerning the crimes and the possible defenses to Mr. Martin and that they "mostly just talked about cocaine and hanging out at bars."  Id. at 18-19.  However, in state court, Petitioner previously claimed that he could not assist Mr. Martin in the defense because Petitioner could not focus with "mental clarity" on the content of the visits, was "unable to fully comprehend discussions with Mr. Martin" and by morning time, he "could barely recall having spoken to Mr. Martin, with little recall of what was discussed."  Ex. I at 11-12, 13, 14.  Based on the record before this Court, this Court concludes that Mr. Martin's performance was not deficient.  As previously noted, at the plea hearing, Petitioner stated he was satisfied with the representation of Mr. Martin and did not need additional time to consider his decision to enter the plea.  Plea Tr. at 5-7.

The record reflects that Petitioner told the Public Defender's Office, who was representing him at the time of the State's initial

ten-year plea offer, that he was in the process of retaining private counsel. Thus, the State's plea offer was put on hold while Petitioner was hopeful of retaining private counsel with the help of his girlfriend. As previously noted in grounds one and two, Petitioner finally retained Mr. Martin and was hopeful he could obtain drug treatment, a lesser charge and lesser sentence. The discussions with Petitioner at the jail, as acknowledged by Petitioner, centered upon Petitioner's drug use.

Even assuming *arguendo* that counsel's performance was deficient, Petitioner has not shown the resulting prejudice. As noted by the trial judge, Petitioner had entered a straight up plea on both counts and was facing a sentencing range of fifty-four months to forty-five years. The prosecutor acknowledged at the plea hearing that the State did not seek forty-five years (the maximum possible sentence) because the defense had argued, in mitigation, that the crime was unsophisticated. Sentencing Tr. at 27. Thus, while the maximum was forty-five years and the State sought twenty-five to thirty years, the trial judge gave a twenty-year sentence with a concurrent fifteen-year sentence in large part due to Mr. Martin's mitigation arguments.

### C. Ground Four

As ground four, Petitioner claims that his plea was involuntarily entered because he was on Elavil, an anti-depressant drug, for all court appearances, which caused him to be "pliable"

and "compliant" and therefore counsel took advantage of him and coerced him into entering the plea. Amended Petition at 18, 20. As acknowledged by Petitioner, he raised this ground in his Rule 3.850 motion (ground four). In denying the ground on the merits, the trial court identified the two-prong <u>Strickland</u> ineffectiveness test as the controlling law and stated in pertinent part:

> In ground four of the Defendant's Supplemental Motion, the Defendant claims his plea was involuntarily entered because he was on Elavil for all court appearances which caused drowsiness and mental confusion. The Defendant states that counsel told him to go along with the court, so the Defendant answered the questions to qualify the plea. The Defendant testified that he had not taken any medications or alcohol within twenty-four hours of entering his plea. (Exhibit "C," pages 5-6.) The Defendant also testified that he had no mental or physical defects that would make him unable to understand what was going on at the plea hearing. (Exhibit "C," page 6.) A defendant may not seek to go behind his sworn testimony at a plea hearing in a post conviction motion. <u>Stano v. State</u>, 520 So.2d 278 (Fla. 1988); <u>Dean v. State</u>, 580 So.2d 808 (Fla. 3d DCA 1991); <u>Bir v. State</u>, 493 So.2d 55 (Fla. 1st DCA 1986). The Defendant's claim that he lied at the plea hearing cannot undermine what he testified to under oath. <u>Dean</u>, 580 So.2d at 810. Therefore, the Defendant's claim is without merit.

Ex. K at 73.

As noted previously, upon Petitioner's appeal, the appellate court per curiam affirmed the trial court's order. Accordingly, the claim was rejected on the merits by the state trial and appellate courts. Thus, there are qualifying state court

decisions.    This   ground   should   be   addressed   applying   the
deferential  standard  for  federal  court  review  of  state  court
adjudications,  as  required  by  AEDPA.   Upon  a  thorough  review  of  the
record  and  the  applicable  law,  it  is  clear  that  Petitioner  is  not
entitled  to  relief  on  the  basis  of  this  claim  because  the  state
courts'  adjudications  of  the  claim  were  not  contrary  to  clearly
established   federal   law,   did   not   involve   an   unreasonable
application  of  clearly  established  federal  law,  and  were  not  based
on  an  unreasonable  determination  of  the  facts  in  light  of  the
evidence  presented  in  the  state  court  proceedings.

     Further,  this  ground  is  without  merit.   Although  a  defendant's
statements  during  the  plea  colloquy  are  not  insurmountable,  the
Supreme  Court  held  in  <u>Blackledge</u>,  431  U.S.  at  73-74,  that  "the
representations  of  the  defendant  [at  a  plea  hearing],  as  well  as
any  findings  made  by  the  judge  accepting  the  plea,  constitute  a
formidable  barrier  in  any  subsequent  collateral  proceedings.
Solemn  declarations  in  open  court  carry  a  strong  presumption  of
verity."  Here,  based  upon  the  record  before  this  Court,  Petitioner
has  not  overcome  this  barrier.

     Petitioner  was  present  at  the  plea  proceeding  and  answered  the
judge's  questions.   At  the  plea  hearing,  Petitioner  confirmed  that
no  one  had  threatened  him,  coerced  him  or  intimidated  him  to  enter
a  plea  of  guilty.   Plea  Tr.  at  5.   The  trial  judge  informed
Petitioner  that  the  plea  of  guilty  was  "a  straight  up  plea  on  both

counts." Id. Petitioner further confirmed that he did not have any drugs or alcohol in the last twenty-four hours that would make him unable to comprehend the plea proceedings and that he did not have any mental or physical defects that would negatively affect his ability to understand the plea proceedings. Id. at 5-6. The trial judge, after the plea colloquy, inquired as to whether Petitioner needed additional time to reflect upon his decision. Id. at 6-7. Petitioner stated he did not need more time and still wanted to enter the plea of guilty. Id. at 7. The trial judge then accepted the plea of guilty on both counts as freely and voluntarily entered. Id.

Additionally, at the sentencing hearing, Petitioner testified in order to show the trial judge his remorse and cooperation. Sentencing Tr. at 18-24. After Petitioner's testimony, the trial judge "reaffirm[ed]" the acceptance of the pleas of guilty and adjudicated him guilty of both charges. Id. at 30. As the record reflects, the trial judge is in the best position to view the demeanor of Petitioner and thereafter assess whether the plea of guilty is freely and voluntarily entered. At both the plea hearing and the sentencing hearing, the trial judge determined that Petitioner's plea of guilty was freely and voluntarily entered.

## D. Ground Five

As ground five, Petitioner claims that counsel was ineffective for counsel's failure to investigate the available videotape from C&B Salvage, which would prove Petitioner was not guilty of strong armed robbery, but of the lesser offense of theft by sudden snatching since the video would show no threat or violence was used; for counsel's misinforming Petitioner that the strong armed robbery charge (count one) would be nolle prosed; and for counsel's failure to depose Helen Cox (the victim of the home invasion robbery) and Kevin Thomas (the victim's neighbor).  As acknowledged by Petitioner, he raised these claims in his Rule 3.850 motion.  In denying the ground on the merits, the trial court identified the two-prong <u>Strickland</u> ineffectiveness test as the controlling law and stated in pertinent part:

> [T]he Defendant also claims that counsel affirmatively represented that count two,[13] Strong Armed Robbery, would be *nolle prosed* by the State. However, the Defendant told the court that he was pleading straight up to the court on both counts. (Exhibit "C," pages 5, 7.) The Defendant knew that he was pleading guilty to both counts. A defendant may not seek to go behind his sworn testimony at a plea hearing in a post conviction motion. <u>Stano v. State</u>, 520 So.2d 278 (Fla. 1988); <u>Dean v. State</u>, 580 So.2d 808 (Fla. 3d DCA 1991); <u>Bir v. State</u>, 493 So.2d 55 (Fla. 1st DCA 1986). Therefore, the Defendant's claim is without merit.

---

[13] The robbery was count one, and the home invasion robbery was count two.  Ex. A; Ex. E.

In ground five of the Defendant's Supplemental Motion, the Defendant claims that counsel rendered ineffective assistance in failing to investigate the evidence and depose witnesses. The Defendant claims that counsel's failures resulted in the Defendant being sentenced to the maximum charge. This Court notes that while the Defendant claims that the investigation or deposition of witnesses would have led to evidence that the Defendant was invited into the home by the victim, Ms. Cox, and that he did not use or threaten to use any force to gain entry, the Defendant stated at his sentencing hearing:

> Defendant: First of all, Ms. Cox, I respect her enough to say that a lot that she said was exactly correct, but some of it was a little different. When I realized what I was doing in her house, she was showing me to the door, and I told her I was sorry. I was out of my mind.
>
> And I hugged her then and I told her I was sorry. I don't know if she left that out on purpose, but I apologize to the family, you know.
>
> [. . .] And the record will show that I cooperated with detectives and I told them all of it, you know, the truth.
>
> I've never run from anything I done wrong. I've told the truth and I take my punishment, and that's - - I feel like I'm here voluntarily to make amends.

(Exhibit "D," pages 18-19.) The Defendant had the opportunity but did not dispute Ms. Cox's statement that the Defendant pushed his way into her home when she tried to close the door. (Exhibit "D," page 6.) Further, at the sentencing hearing[,] the Defendant stated

after he knocked on the door and saw the victim:

> State: Now, you admitted in your statement that you told her you had a knife, correct?
>
> Defendant: Yes, sir.
>
> State: So you did tell her that you had a knife.
>
> Defendant: Yes, sir, I did.
>
> State: Do you dispute the fact that you had a knife?
>
> Defendant: Yes, sir.
>
> State: Okay. She says she saw you clearly with a pocketknife.
>
> Defendant: Yes, sir.
>
> State: And you say --
>
> Defendant: Because I pushed her and manipulated her, but I didn't raise a hand to her. [. . .]

(Exhibit "D," page 21.) The Defendant admitted that he told the victim he had a knife, pushed and manipulated her to gain entry to her home. A defendant may not seek to go behind his sworn testimony at a plea hearing in a post conviction motion. Stano v. State, 520 So.2d 278 (Fla. 1988); Dean v. State, 580 So.2d 808 (Fla. 3d DCA 1991); Bir v. State, 493 So.2d 55 (Fla. 1st DCA 1986). Therefore, the Defendant's claim is without merit.

The Defendant also contends that if counsel had viewed the video store tape he would have seen that the Defendant was not guilty of the charge of Strong Armed Robbery, but of the lesser offense of Theft by Sudden Snatching. The Defendant states in his motion that while the video would clearly show that

he reached across the counter to remove the money from the cash register till, it would have shown that the store clerk voluntarily backed away from the till and no threat or violence was used.[14] This Court notes that the Defendant pled guilty to Robbery in violation of section 812.13(2)(c), Florida Statutes (2002). (Exhibits "A," "B.") The State could prove the charge by showing that the money was taken by putting a person in fear. Section 812.13(1), Florida Statutes (2002).[15] Accordingly, the State did not have to prove that the Defendant threatened or used violence to get the money. Further, the Defendant could not have committed Theft by Sudden Snatching because he did not take the money from a victim's person; he took the money from a store register. Section 8[12].131, Florida Statutes (2002).[16] Accordingly, this Court finds the Defendant has failed to establish error on the part of counsel or prejudice to his case. <u>Strickland</u>, 466 U.S. 668; <u>Hill</u>, 474 U.S. at 59.

---

[14] At the sentencing hearing, Petitioner testified that when the cashier opened the cash register, he reached over the counter and took the money out of the drawer. Sentencing Tr. at 24. He noted that the cashier did not try to stop him, but just backed up. <u>Id</u>.

[15] Florida Statutes § 812.13 states that robbery means the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear.

[16] Florida Statutes § 812.131 states that robbery by sudden snatching means the taking of money or other property from the victim's person, with intent to permanently or temporarily deprive the victim or the owner of the money or other property, when, in the course of the taking, the victim was or became aware of the taking. In order to satisfy this definition, it is not necessary to show that the offender used any amount of force beyond that effort necessary to obtain possession of the money or other property; or there was any resistance offered by the victim to the offender or that there was injury to the victim's person.

Ex. K at 73-76.

As noted previously, upon Petitioner's appeal, the appellate court per curiam affirmed the trial court's order. Accordingly, the claims were rejected on the merits by the state trial and appellate courts. Thus, there are qualifying state court decisions. These grounds should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA. Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of these claims because the state courts' adjudications of the claims were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

### E. Ground Six

As ground six, Petitioner claims that counsel was ineffective for failure to file a direct appeal. Specifically, he claims that he requested that Mr. Martin do so, but he failed to do so. As acknowledged by Petitioner, he raised this claim in his Rule 3.850 motion. In denying the ground on the merits, the trial court identified the two-prong <u>Strickland</u> ineffectiveness test as the controlling law and stated in pertinent part:

> In ground six of the Defendant's
> Supplemental Motion, the Defendant claims that

38

> counsel rendered ineffective assistance in
> failing to file a direct appeal. The Defendant
> states that he asked counsel to file a direct
> appeal, that counsel agreed, but failed to do
> so. As the Defendant pled guilty and did not
> reserve any issues for appeal, the only issue
> he could have appealed was that his sentence
> was illegal. The Defendant does not claim that
> his sentence is illegal nor does this Court
> find it to be. Accordingly, even assuming
> counsel was ineffective for failing to file a
> direct appeal on behalf of the Defendant, the
> Defendant has failed to establish prejudice to
> his case. <u>Strickland</u>, 466 U.S. 668; <u>Hill</u>, 474
> U.S. at 59.

Ex. K at 76.

As noted previously, upon Petitioner's appeal, the appellate court per curiam affirmed the trial court's order. Accordingly, the claim was rejected on the merits by the state trial and appellate courts. Thus, there are qualifying state court decisions. This ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA. Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of the claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

After a complete review of the record, this Court finds this ineffectiveness claim to be without merit. Any claim that Petitioner wished to raise with respect to the alleged involuntary nature of the plea was properly raised in the Rule 3.850 motion, which Petitioner filed on his own. In Florida, a claim of an involuntary plea may be raised in a Rule 3.850 motion for post conviction relief. See Fla. R. Crim. P. 3.850(a)(5). Counsel cannot be faulted for failing to file a motion to withdraw a plea or an appeal when there is not a meritorious issue to raise on direct appeal. Further, Petitioner was not prejudiced when such a ground was not included on direct appeal since any omitted claim would not have had a reasonable probability of success before the appellate court. Petitioner challenged the alleged involuntary plea in his Rule 3.850 motion, and the appellate court per curiam affirmed the denial of the Rule 3.850 motion. This ineffectiveness claim is without merit.

### **F. Ground Seven**

As ground seven, Petitioner claims that counsel was ineffective for failure to appear for a September 7, 2002, pretrial conference. As acknowledged by Petitioner, he raised this claim in his Rule 3.850 motion. In denying the ground on the merits, the trial court identified the two-prong Strickland ineffectiveness test as the controlling law and stated in pertinent part:

> In ground seven of the Defendant's Supplemental Motion, the Defendant claims that

40

counsel rendered ineffective assistance in failing to appear for court proceedings. The Defendant claims that counsel failed to appear for the pretrial conference on September 7, 2002, at which time the State made the plea offer of ten (10) years. However, as indicated by the Defendant in ground[s] one and two of his Supplemental Motion, the Defendant was represented by the Public Defender at this pretrial hearing.[17] Accordingly, while counsel, if he had been retained by the Defendant at this time, should have appeared for the pretrial conference, the Defendant has failed to establish prejudice to his case. Strickland, 466 U.S. 668; Hill, 474 U.S. at 59.

Ex. K at 76.

As noted previously, upon Petitioner's appeal, the appellate court per curiam affirmed the trial court's order. Accordingly, the claim was rejected on the merits by the state trial and appellate courts. Thus, there are qualifying state court decisions. This ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA. Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of the claim because the state

---

[17] In denying the Rule 3.850 motion, the trial court noted that Petitioner could not be represented by the Public Defender and privately retained attorney, Craig Martin, at the same time. The Public Defender did not withdraw from Petitioner's case until October 3, 2002. Ex. K at 69 n.2. Thus, Mr. Martin was not obligated to be present at the September 7, 2002, pretrial conference. The Public Defender was present to represent Petitioner when the State offered the ten-year plea deal. Ex. I at 30-31.

courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

### G. Ground Eight

As ground eight, Petitioner claims the state court erred by summarily denying the Rule 3.850 motion without conducting an evidentiary hearing.  To the extent that Petitioner's claim pertains to alleged errors in the post-conviction proceedings, such alleged defects do not state a basis for federal habeas relief.

The purpose of a federal habeas proceeding is review of the lawfulness of Petitioner's custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United States.[18]   Coleman v. Thompson, 501 U.S. 722, reh'g denied, 501 U.S. 1277 (1991).

The Eleventh Circuit has noted:

> In Spradley v. Dugger, we held that where a petitioner's claim goes to issues unrelated to the cause of petitioner's detention, that claim does not state a basis for habeas relief.  825 F.2d 1566, 1568 (11th Cir. 1987) (involving claims as to errors at a hearing on

---

[18] A federal district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. §2254(a).

the petitioner's 3.850 motion); <u>see also</u> <u>Nichols v. Scott</u>, 69 F.3d 1255, 1275 (5th Cir. 1995) ("An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself.") (internal quotes omitted); <u>Franzen v.</u> <u>Brinkman</u>, 877 F.2d 26, 26 (9th Cir. 1989) (agreeing with the majority view and holding that "a petition alleging errors in the state post-conviction review process is not addressable through habeas corpus proceedings"). Therefore, while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief. <u>See</u> <u>Spradley</u>, 825 F.2d at 1568.

<u>Quince v. Crosby</u>, 360 F.3d 1259, 1261-62 (11th Cir.), <u>cert</u>. <u>denied</u>, 543 U.S. 960 (2004). Thus, Petitioner is not entitled to relief on the basis of this claim.

For the previously-stated reasons, the Amended Petition will be denied, and this case will be dismissed with prejudice.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Amended Petition (Doc. #12) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

43

2.    The Clerk of the Court shall enter judgment denying the Amended Petition and dismissing this case with prejudice.

3.    The Clerk of the Court shall close this case.

**DONE AND ORDERED** in chambers in Jacksonville, Florida, this 10th day of July, 2008.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

sc 7/9
c:
Wesley K. Ashcraft
Ass't Attorney General (Jordan)